**UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

In the matter of
a subpoena for deposition
issued in the case of

| | |
|---|---|
| NATIONAL ABORTION FEDERATION et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. |
| v. | ) |
| | ) |
| JOHN ASHCROFT, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| TENET HEALTHSYSTEM HAHNEMAN, LLC, D/B/A HAHNEMANN UNIVERSITY HOSPITAL, | ) ) ) |
| | ) |
| Movant. | ) |

## O R D E R

AND NOW, this _____ day of _____, 2004, upon consideration

of the Motion to Quash of Tenet HealthSystem Hahnemann, LLC, and any response thereto, it is

hereby ORDERED and DECREED that said Motion is GRANTED.  The subpoena issued to

Tenet HealthSystem Hahnemann, LLC by defendant John Ashcroft on January 5, 2004 is hereby

QUASHED.

By The Court:

_____
                                    U.S.D.J.

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In the matter of
a subpoena for deposition
issued in the case of

NATIONAL ABORTION FEDERATION )
et al.                        )
                              )
            Plaintiffs,       )
                              )        No.
        v.                    )
                              )
JOHN ASHCROFT,                )
                              )
            Defendant,        )
                              )
                              )
TENET HEALTHSYSTEM HAHNEMAN, )
LLC, D/B/A HAHNEMANN UNIVERSITY)
HOSPITAL,                     )
                              )
                              )
            Movant.           )

## MOTION TO QUASH SUBPOENA

Pursuant to F.R.Civ.P.45 (c)(3)(A), Movant, Tenet HealthSystem Hahnemann,

LLC d/b/a Hahnemann University Hospital ("Hahnemann"), by and through its counsel,

McCann & Geschke, P.C. respectfully moves this Honorable Court for an Order quashing

a subpoena served on it on or about January 5, 2004.  The subject subpoena and its

attachments are Exhibit "A" to this Motion.

In support of this Motion, Hahnemann avers as follows:

1.      The subpoena in question was issued by the Clerk of the United States District Court for the Eastern District of Pennsylvania in connection with an action captioned National Abortion Federation et al. v. Ashcroft, Case No. 03 Civ. 8695 (RCC), pending in the United States District Court for the Southern District of New York.  NAF v. Ashcroft is a constitutional challenge to the Partial Birth Abortion Ban Act of 2003 ("PBABA"), 18 U.S.C. § 1531, which was signed into law on November 5, 2003.

2.      Movant, Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital (hereinafter "Hahnemann"), operates a large teaching hospital in Philadelphia.  Hahnemann does not operate a facility in New York and is not a party to NAF v. Ashcroft.

3.      One of the plaintiffs seeking to invalidate the PBABA in NAF v. Ashcroft is Mark I. Evans, M.D., an obstetrician and gynecologist.  In or about 2001-2002, Dr. Evans had staff privileges at Hahnemann, but was not employed by Hahnemann.  Dr. Evans' affiliation with Hahnemann ceased in October 2002.

4.      On January 5, 2004, Hahnemann was served with a subpoena, issued by this Court at the request of defendant Ashcroft.  The subpoena commands production of patient medical records from Hahnemann for patients who received care from Dr. Evans while he was affiliated with Hahnemann.

5.      Upon information and belief, Hahnemann avers that plaintiff/physicians (other than Dr. Evans) submitted written declarations in support of plaintiffs' Motion for a Temporary Restraining Order in NAF v. Ashcroft, in which those physicians described various circumstances in which they performed second trimester abortion procedures that arguably are banned by the PBABA.

6.      Upon information and belief, subsequent to the production of said Declarations, defendant Ashcroft served Interrogatories and Requests for Production of Documents upon all plaintiff/physicians.  The discovery directed to Dr. Evans was attached as an exhibit to the subpoena issued to Hahnemann.  See Exhibit "A."  Said interrogatories and document requests demand that Dr. Evans identify Hahnemann's medical record numbers for patients upon whom he had performed second-trimester abortions.

7.      As Dr. Evans has not had clinical privileges at Hahnemann since October 2002, he is no longer permitted to have access to said medical records.  Thus, Dr. Evans is not in possession, custody or control of the same.

8.      On January 5, 2004, Defendant Ashcroft caused a subpoena to be issued by the United States District Court for the Eastern District of Pennsylvania, directed to Hahnemann.  The subpoena demands that Hahnemann produce, by January 21, 2004, "All medical records associated with those medical records numbers to be identified by plaintiff Mark I. Evans, M.D. in response to the discovery demand served upon him in [*NAF v. A*shcroft]."

9.      Pursuant to F.R.Civ.P. 45(c)(2)(B), Hahnemann respectfully moves that this Court quash the subpoena on the grounds that (1) the records are "privileged or otherwise protected from disclosure" within the meaning of Rule 45(c)(3)(B)(iii), or (2) that their production would cause an "undue burden" on the patients whose confidential information would be disclosed and on Hahnemann within the meaning of Rule 45(c)(3)(B)(iv).

10.    In the alternative, Hahnemann respectfully requests that this Court enter an Order providing that Hahnemann may redact all identifying information for the medical records which it may be compelled to produce.  Specifically, Hahnemann asserts that it is entitled to the entry of an Order quashing the subject subpoena on the following grounds:

a.    Both HIPAA ("Health Insurance Portability and Accountability Act") and Pennsylvania law preclude the disclosure of medical records of non-parties under the circumstances present herein;

b.    The authorization order entered by the Honorable Richard Conway Casey, U.S.D.J., is of no effect since the intent and effect of this authorization is unclear; the "authorization" was issued absent notice to Hahnemann and/or to any of the patients whose records might be affected by said Order; and because the authorization is not a "qualified protective order" as it does not limit access of the records sought, nor does it provide direction to the parties as to how the records should be disposed at the conclusion of the litigation.

c.    The information set forth in said medical records is privileged under Pennsylvania common law, which this Court has the discretion to follow;

d.    The subpoena is unduly burdensome and is overbroad.

11.     Based upon the foregoing, movant, Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital, respectfully requests that this Honorable Court grant the instant motion and quash the subpoena served upon it by Ashcroft on January 5, 2004.

Respectfully submitted,
McCann & Geschke, P.C.

_____
Timothy I. McCann, Esquire
Andrew S. Kessler, Esquire
Attorneys for Movant, Tenet
HealthSystem Hahnemann, LLC d/b/a
Hahnemann University Hospital

1819 JFK Boulevard, Ste. 330
Philadelphia, PA  19103
215-568-1133

**UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

In the matter of
a subpoena for deposition
issued in the case of

| | | |
|---|---|---|
| NATIONAL ABORTION FEDERATION et al. | ) ) ) | |
| Plaintiffs, | ) ) | No. |
| v. | ) ) | |
| JOHN ASHCROFT, | ) ) | |
| Defendant, | ) ) ) | |
| TENET HEALTHSYSTEM HAHNEMAN, LLC, D/B/A HAHNEMANN UNIVERSITY HOSPITAL, | ) ) ) ) | |
| Movant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
TENET HEALTHSYSTEM HAHNEMANN, LLC
D/B/A HAHNEMANN UNIVERSITY HOPSITAL'S MOTION TO QUASH SUBPOENA**

Movant, Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital ("Hahnemann"), by and through its counsel, McCann & Geschke, P.C., respectfully submits this Memorandum of Law in support of its Motion to Quash Subpoena.

**Introduction**

In order to defend the privacy interests of the patients to whom Hahnemann has rendered care, patients who are without notice that their confidential medical records have been subpoenaed, Hahnemann has been compelled to file the instant Motion to Quash a subpoena served upon it by the Attorney General of the United States of America, defendant John Ashcroft. Said subpoena has been issued in an action between the National Abortion Federation and John Ashcroft currently pending in the United States District Court for the Southern District of New York in which plaintiff, National Abortion Federation, is challenging the constitutional validity of the recently enacted federal Partial Birth Abortion Ban Act, 18 U.S.C §1531.

Movant seeks to quash the instant subpoena on a number of grounds, including, *inter alia*: the Health Insurance Portability and Accountability Act ("HIPAA") and Pennsylvania law prohibit disclosure of non-party medical records; the "authorization" issued by The Honorable Richard Conway Casey is of no effect since it was issued without notice to Hahnemann or the patients whose records are sought by Ashcroft; the "authorization" is not a "qualified protective order"; the records are privileged pursuant to Pennsylvania common law; and responding to the subpoena is unduly burdensome.


**Statement of Facts**

National Abortion Federation, et al. v. Ashcroft, is pending in the United States District Court for the Southern District of New York (docketed at Case No. 03 Civ. 8695 (RCC)). Said action is a constitutional challenge to the Partial Birth Abortion Ban Act, 18 U.S.C §1531 brought by the National Abortion Federation and by various individual physicians. Movant herein, Hahnemann, is not a party to National Abortion Federation, et al. v. Ashcroft.

2

Although Hahnemann is not a party to the action between National Abortion Federation and Ashcroft, it has been drawn into this fray because one of the plaintiffs, Mark I. Evans, M.D., is a physician who previously possessed staff privileges at Hahnemann. Upon information and belief, prior to the issuance of the subpoena, Ashcroft served Dr. Evans with Interrogatories and a Request for Production of Documents requesting that Dr. Evans identify all medical record numbers and produce the medical records for all women upon whom he performed a second-trimester abortion procedure while practicing at Hahnemann. See Exhibit "A."

As of the time that Ashcroft served said discovery requests upon Dr. Evans, Dr. Evans was no longer a member of the medical staff at Hahnemann and, in the interest of protecting the privacy of its patients and maintaining the confidentiality of their records, Hahnemann denied Dr. Evans access to the hospital's medical records.[1]

Hahnemann further understands that at the request of Ashcroft, The Honorable Richard Conway Casey entered an Order dated December 31, 2003, which provided as follows:

> In accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. 164.512(e)(1)(i), non-party witness Hahnemann University Hospital (the "Hospital") is authorized to disclose to the Defendant the medical records and information sought in the attached subpoena to be served on the Hospital by Defendant pursuant to Rule 45 of the Federal Rules of Civil Procedure.
>
> Any application regarding this subpoena must comply with Federal Rule of Civil Procedure 45(c) and (d).

A copy of the Order is attached hereto as Exhibit "B."

---

[1]      Precluding Dr. Evans from inspecting the medical records is entirely consistent with the provisions of 28 Pa. Code. §115.27 ("Confidentiality of Medical Records) which provides, "All records shall be treated as confidential. Only authorized personnel shall have access to the records. The written authorization of the patient shall be presented and then maintained in the original record as authority for the release of medical information outside the hospital."

On or about January 5, 2004, a subpoena, issued by the United States District Court for the Eastern District of Pennsylvania was served upon Hahnemann. See Exhibit "A." Said subpoena attached the discovery requests previously served upon plaintiff Evans and commanded Hahnemann to produce all documents responsive thereto by January 21, 2004.

Pursuant to Federal Rule of Civil Procedure 45(c)(A), Hahnemann moves this Court for an Order quashing the subject subpoena on the grounds that the subpoena seeks information which is privileged or protected from disclosure and because compliance with said subpoena would impose an undue burden upon the hospital and the women whose records Ashcroft seeks disclosed.[2]

### Argument

1.    *HIPAA and Pennsylvania Statutory Law Prohibit Disclosure of Non-Party Medical Records.*

With the enactment of HIPAA, Congress ordered the Department of Health and Human Services to develop new regulations to simplify the administration of health insurance and to protect the privacy and security of patient health information. Effective April 14, 2003, the privacy regulations developed by HHS became effective. Said regulations are applicable to "Protected Health Information," which includes the medical records subpoenaed from Hahnemann. 45 C.F.R. §164.501.

Both HIPAA and the HHS regulations contain an anti-preemption provision which provides that if State law provides more stringent privacy standards than the HHS regulations,

---

[2]    As Hahnemann owes a duty to the patients to maintain the confidentiality of the records, 28 Pa. Code §115.27, it is the proper party to assert the existence of a physician-patient privilege with either a statutory or constitutional basis. See 42 Pa.C.S.A. §5929; In re: B., 394 A.2d 419 (Pa. 1978)(Opinion of Mr. Justice Manderino joined by Mr. Justice Larsen).

the State law provisions shall control disclosure of the requested information.  As set forth in 42

U.S.C. §1320d-7(a)(2), said anti-preemption provision states, in pertinent part:

> A provision or requirement under this part, or a standard or
> implementation specification adopted or established under sections
> 1320d-1 through 1320d-3 of this title, shall not supersede a
> contrary provision of State law, if the provision of State
> law…(B)…relates to the privacy of individually identifiable health
> information.

Under 45 C.F.R. §160.203(b), a HIPAA standard or requirement does not preempt a

"contrary" provision of State law if the State law provision "relates to the privacy of individually

identifiable health information and is more stringent than" a standard in the HHS regulations.

One of the definitions of "contrary" includes, "A covered entity would find it impossible to

comply with both the State and federal requirements."[3]  A State law is "more stringent" than the

HIPAA standard if it "restricts a use of disclosure in circumstances under which such use or

disclosure otherwise would be permitted under this subchapter…" 45 C.F.R. §160.202.

An analysis of HIPAA and Pennsylvania law reveals that Pennsylvania law is more

"stringent" than HIPAA and, as such, is not preempted by HIPAA.  It is Hahnemann's position

that under the anti-preemption clause, the medical records sought to be produced are protected

from disclosure by Pennsylvania law.  Further, even in the event that this Court deems the anti-

preemption clause to be inapplicable, HIPAA nevertheless forbids the disclosure of the medical

records in question as its requirements for disclosure have not been satisfied.

---

[3]     Pursuant to the definition set forth in 45 C.F.R. §160.103, Hahnemann University Hospital, is a "covered entity."

*HIPAA's Standard*

Pursuant to 45 C.F.R. §164.512(e), a covered entity may disclose protected health information, in the course of a judicial proceeding, in response to a subpoena provided that the covered entity receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of 45 C.F.R. §164.512(e)(1)(v) or that reasonable efforts have been made to notify the patients of the potential disclosure of their medical records.

A qualified protective order is defined as a court order that prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation and requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding. Although Ashcroft might contend that the Order issued by Judge Conway Casey is a "qualified protective order" since it "authorizes" Hahnemann to disclose the information sought, a close examination of the Order dated December 31, 2003 with the provisions of 45 C.F.R. §164.512(e) (1) (v) reveals that Judge Conway Casey's Order falls short of the requirements for a qualified protective order. Specifically, Judge Conway Casey's Order fails to prohibit the parties from using or disclosing the protected health information for any purpose other than the litigation and the Order is silent relative to destruction of the documents which might be produced.

Ashcroft, in serving the subject subpoena, has failed to comply with the provisions of HIPAA and has not provided Hahnemann with the required "satisfactory assurances" that reasonable efforts were made to secure a qualified protective order that meets the requirements of 45 C.F.R. §164.512(e)(1)(v).

In the absence of a qualified protective order, HIPAA mandates that when medical record production is sought, the requesting party makes a reasonable effort to notify, in writing, the person whose medical records are being sought and to afford that individual an opportunity to object to the production. See 45 C.F.R. §164.512(e)(1)(B)(iii). Obviously, given that the patients whose records are at issue herein are completely unaware of Ashcroft's request, the required assurances have never been given.

Although HIPAA would appear to permit the disclosure of the documents in question, provided that reasonable efforts were made to notify the individuals whose records were sought or provided that a qualified protective order was in place, Ashcroft has failed to satisfy either of these requirements and Hahnemann is therefore under no obligation to produce the subject information.

### *Pennsylvania Constitutional and Statutory Law*

Not only are the records protected by HIPAA, the records are also more stringently guarded by Pennsylvania law. The Pennsylvania Constitution asserts as its very first proposition that there are certain "inherent rights of mankind." Article 1 Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, §1.

Beyond these constitutional safeguards, Pennsylvania statutory law further protects the disclosure of medical information. Specifically, 42 Pa.C.S.A. §5929, "Physicians not to disclose information," provides:

> No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

Information that a woman underwent a second trimester abortion is information which, if disclosed, may very well tend to blacken the character of the patient. Thus, Pennsylvania statutory law prohibits the production of those patients' medical records without the consent of said patients. Such consent has not been sought let alone obtained in the instant proceedings.

The disclosure of the medical records sought by the Attorney General is inextricably intertwined with a person's reputation. Given the highly charged nature of the raging abortion rights debate which currently exists in this county, those women who have undergone abortions, for whatever reason, possess an inherent right to maintain the privacy of that decision and of the medical records concerning their communications with their physician regarding the performance of this procedure, so that it shall not have any effect upon their reputation.

The Pennsylvania Supreme Court's decision in <u>Stenger v. Lehigh Valley Hospital Center</u>, 609 A.2d 796 (Pa. 1992), provides an instructive example of the Court's examination of the sanctity of the confidentiality of medical records. In <u>Stenger</u>, plaintiffs brought an action asserting that defendants were negligent in the collection and dispensing of blood and blood products and that as a result plaintiffs sustained serious injury and death. The <u>Stenger</u> plaintiffs requested that the defendant hospital identify any individual who received blood and/or blood

products from a particular blood center with whom the hospital conducted business; whether said individuals had been tested for AIDS and the results of each such blood test. The hospital refused to comply with these requests.

The blood center at issue contended that the disclosure of such information was violative of the patients' rights to privacy under both the Pennsylvania and United States Constitutions and that it was not permissible under the terms of Pennsylvania Rule of Civil Procedure 4011(b) which, in conjunction with Pennsylvania Rule of Civil Procedure 4003, limited discovery to matters which were not privileged.

In reviewing this position, the Pennsylvania Supreme Court acknowledged that the right of privacy is a well-settled part of the jurisprudential tradition in the Commonwealth of Pennsylvania and that the Court must be mindful to "avoid unjustified intrusions into the private zone of our citizens' lives." Stenger, 609 A.2d at 800. While the right of privacy was not an unqualified one, "it must be balanced against weighty competing private and state interests." Fabio v. Civil Service Commission of City of Philadelphia, 414 A.2d 82 (Pa. 1980). The Supreme Court recognized that there was no longer any question that the United States Constitution provides protection for an individual's right to privacy. See Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed. 2d 64 (1977). Two distinct types of privacy interests have been recognized: the individual's interest in avoiding disclosure of personal matters and the interest in independence in making certain kinds of important decisions. These privacy interests have been distinctly recognized under the Pennsylvania Constitution. See In re June 1979 Allegheny County Investigating Grand Jury, 415A.2d 73 (Pa. 1980); In re "B", 394 A.2d 419 (Pa. 1979).

As the Pennsylvania Supreme Court noted in Stenger, the "right at issue herein concerns avoiding disclosure of personal matters" i.e., protecting an individual from revealing matters

which could impugn his character and subject him to ridicule or persecution. Stenger, 609 A.2d at 800. Furthermore, the Pennsylvania Supreme Court acknowledged that, pursuant to the pronouncements of the Pennsylvania Constitution, people have the right to be let alone. Stenger, 609 A.2d 802.

Given these parameters, the Pennsylvania Supreme Court analyzed the propriety of the discovery request, being mindful that the only a compelling state interest would override one's privacy rights. Id. Unlike the case at bar where no compelling state interest exists, in Stenger, the Court held that the state's interest in the preservation of the integrity of the volunteer blood donations was "compelling."

> Allowing AIDS contaminated blood into the system may result in horrific, incalculable harm. Hence, the state's interest in allaying these concerns and restoring the integrity of the blood supply is a compelling one. This limited discovery order will foster society's interest in ensuring institutional accountability while preserving the privacy of those individuals who generously donate their blood.

Stenger, 609 A.2d 802. Finding that the state's intrusion into the privacy rights would permit the state to effect its purpose (i.e., protection of the blood supply), the Court permitted "completely anonymous discovery" in that no names or addresses of blood donors could be disclosed.

Applying the analysis of Stenger to the case at bar, the interests of the women whose medical records are at issue implicate both prongs of the right to privacy: the records at issue herein and the information set forth therein are so personal that they touch upon both the interest in avoiding the disclosure of said information and the ability of those patients to independently make important health decisions without the concern that their decisions may, at some later time, be publicly displayed in litigation in which those patients are not a party.

There is no legitimate argument that the women at issue herein do not have a right to avoid the disclosure of this highly personal information. The decision whether to undergo an

10

abortion is one which by its very nature is a difficult decision to make. Women who underwent a second trimester abortion certainly have an interest in not revealing their confidential discussions with physicians and/or the medical details concerning the nature of the medical care and treatment received since it could impugn their character and subject them to ridicule or persecution. The women whose records are issue herein are not litigants in the instant dispute between the Attorney General and the National Abortion Federation, as such, they have the right to be let alone.

Unlike <u>Stenger</u>, in which the sanctity of the volunteer blood supply was at issue, the Attorney General cannot, in the instant litigation, articulate a compelling state interest which is of such magnitude to override a non-party's privacy rights. What legitimate state purpose will be effectuated by disclosing the names and confidential information sought by the Attorney General in connection with a constitutional challenge by certain physicians to a federal law?[4] No valid justification exists to allow such a blatant invasion of privacy into the reproductive rights of the women whose medical records would be disclosed. Rather, seeking production of the medical records at issue appears to be vindictive and mean-spirited in that it seeks to potentially harm the reputations of innocent individuals with no interest or stake in the litigation simply because their physician chose to challenge the constitutionality of a statute. These particular patients, whose physicians have chosen to engage in litigation, should not somehow be singled out for public disclosure of their intimate medical treatment when no legitimate purpose could be served by production of the requesting documents.

---

[4]      Upon information and belief, Hahnemann understands that other plaintiff/physicians provided a declaration in support of plaintiffs' Motion for a Temporary Restraining Order which set forth certain representations regarding the performance of second trimester abortions. Hahnemann further understands that Ashcroft served the discovery at issue upon these plaintiffs in order that Ashcroft might cross-examine these plaintiff/physicians with information contained in the medical records of patients of these physicians. As Dr. Evans did not submit such a declaration, Ashcroft has yet to articulate the purpose to be served by production of the medical records from Hahnemann.

As the disclosure of the medical records sought will invade the privacy of the women whose medical records are sought to be produced and as no compelling state interest exists to permit the publication of such confidential information, Hahnemann asserts that even "anonymous discovery" is unwarranted and the subject subpoena should be quashed.

**2.      The "Authorization" Of The United States District Court For The Southern District Of New York Is Not A Qualified Protective Order And Is Of No Effect.**

The subpoena at issue was served along with a copy of an Order issued by The Honorable Richard Conway Casey dated December 31, 2003, which states:

> In accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. 164.512(e)(1)(i), non-party witness Hahnemann University Hospital (the "Hospital") is authorized to disclose to the Defendant the medical records and information sought in the attached subpoena to be served on the Hospital by Defendant pursuant to Rule 45 of the Federal Rules of Civil Procedure.
>
> Any application regarding this subpoena must comply with Federal Rule of Civil Procedure 45(c) and (d).

See Exhibit "B."

The import of this authorization is unclear to Hahnemann since it was not privy to the events which culminated in the entry of said Order. The Order certainly is not a "qualified protective order" as provided for by 45 C.F.R. §164.512(e)(1)(v) because the Order in question, by its very terms, fails to prohibit the parties from using or disclosing the protected health information for any purpose other than the litigation at bar and because the Order fails to require the return to the hospital or destruction of the protected health information (including all copies made) at the end of the litigation. Absent these affirmative directives, the Order does not constitute a qualified protective order.

The Order in question could not, and did not, determine the issues raised within the instant Motion to Quash.  Hahnemann was never provided with notice that Ashcroft sought to have such an order issued.  Hahnemann only received the Order after it had been entered and the subpoena in question issued.  Moreover, Hahnemann was never afforded an opportunity to present argument to the issuing Judge regarding the propriety of entering such an order with due consideration of the weighty privacy interests involved.

### 3. *The Records Are Privileged And Are Protected By Discovery By Federal Rule of Evidence 501.*

Federal Rule of Evidence 501 states that the "privilege of a witness shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." F.R.Ev. 501.  This mechanism for application of a privilege recognizes that "the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions. Funk v. United States, 290 U.S. 371, 383, 54 S.Ct. 212, 216, 78 L.Ed. 369 (1933).  Further, the Senate Report accompanying the adoption of Rule 501 indicated that the Rule "should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship...should be determined on a case-by-case basis." S. Rep. No. 93-1277, p. 13 (1974) U.S. Code Cong. & Admin. News 1974, pp. 7051, 7059.  The Supreme Court further recognized the fluid nature of the law governing privileges of witnesses at federal trials when it stated that the federal courts should, "continue the evolutionary development of testimonial privileges." Trammell v. United States, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980).

The federal courts have held that there is no universal physician-patient privilege under federal common law. <u>Sarko v. Penn-Del Directory Company</u>, 170 F.R.D. 127, 131 (1997). In <u>Jaffee v. Redmond</u>, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court was called upon to determine whether federal law recognized the privilege protecting confidential communications between psychotherapist and patient. <u>Jaffee</u> involved a civil suit for damages arising out of a police shooting. After the shooting, the defendant police officer treated with a licensed clinical social worker and plaintiff sought to discover the notes made in connection with these counseling sessions.

Upon review of the facts in <u>Jaffee</u>, the Supreme Court recognized a psychotherapist-patient privilege holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure." <u>Jaffee</u>, 518 U.S. 1, 15. In so holding, the Supreme Court highlighted four considerations of "reason and experience" which persuaded the Court that the privilege being sought outweighed the need for the evidence:

- Successful psychotherapy is dependent upon preserving an "atmosphere of confidence and trust," <u>Jaffee</u>, 518 U.S. at 10;

- Where the disclosure of the "sensitive nature of the problems…may cause embarrassment or disgrace," <u>Id.</u>;

- The privilege serves the public interest in providing and encouraging the treatment of mental health problems, <u>Id.</u> at 11; and

- The evidentiary benefit resulting from the denial of the privilege was "modest." <u>Id.</u> at 11.

At issue herein is the confidentiality of the communications between a physician and a patient as set forth in the medical records of individuals who are not parties to the instant

14

litigation. As such, the rationale employed by the Supreme Court in Jaffee, is equally applicable to the case at bar.

As in Jaffee, recognizing a privilege for physician patient communications is vital to the protection of the sanctity of the physician patient relationship and to ensuring that patients are encouraged to seek and obtain the medical and reproductive care which they desire. Patients need to feel comfortable in communicating all of their pertinent medical information to their physician. The shield of confidentiality is a vital instrument for protecting frank and honest discussion between patient and physician. Protecting the confidentiality of said records creates an atmosphere in which candid discussions between physician and patient can occur. This is especially true in the context of reproductive issues which involve medical and emotional concerns. Supporting candor between patient and physician also serves a societal interest because it fosters the delivery of appropriate medical care and treatment for all of the patient's health concerns which are expressed. Permitting the production of the records in question may have a chilling effect on communications between patients and physicians on health concerns which deal with issues of intimacy. Such a chilling effect will infringe upon a constitutionally protected right and will negatively impact the delivery of medical care to women in need of the same.

The Court's concern regarding issues which necessarily involve "embarrassment and disgrace" is also applicable to the case at bar. The decision to terminate a pregnancy is one of the most difficult and private decisions a woman can make. It is also a decision which, given the current debate on the morality of abortion, can be met with apprehension, fear and, in some instances, confrontation and hostility. A patient contemplating this decision should know that

her medical records will not somehow wind up in a public trial in which she is not a party and in which she has no control over who has access to her most private of records.

As to the issue of the "evidentiary benefit" of production of these records, as there has been no explanation as to why the Attorney General seeks the disclosure of the medical records which it has subpoenaed from Hahnemann, it is difficult to determine what evidentiary benefit exists to the production of the same.

As of 1998, thirty three states and the District of Columbia recognized the patient-physician privilege.[5] "In deriving the principles of federal common law which apply under Rule 501, the federal courts typically look to the state privilege law and follow its lead unless there is some strong federal policy to the contrary." Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 632 (1997). As "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one," Jaffee, 518 U.S. at 12-13, this Court should acknowledge the state of the law in a majority of the states of this union and should apply the rationale in Jaffee to protect the confidential communications between non-party patients and physicians by recognizing the patient-physician privilege.

---

[5]    See, e.g., Alaska R. Evid. 504; Ariz. Rev. Stat. Ann. § 12-2235 (West 1994); Ariz. Rev. Stat. Ann. § 13-4062(4) (West 1989); Ark. Unif. R. Evid. 503; Cal. Evid. Code § § 990-1007 (West 1966 & Supp. 1983); Colo. Rev. Stat. § 13-90-107 (1987 & Supp. 1996); Del. Unif. R. Evid. 503; D.C. Code Ann. § 14-307 (1981); Haw. R. Evid. 504; Idaho Code § 9-203 (Supp. 1986); 735 Ill. Comp. Stat. Ann. 5/8-802 (West 1992 & Supp. 1997); Ind. Code Ann. § 34-1-14-5(4) (West 1983 & Supp. 1996); Iowa Code § 622.10 (West 1950 & Supp. 1997); Kan. Stat. Ann. § 60-427 (1994); Me. R. Evid. 503; Mich. Comp. Laws Ann. § 600.2157 (West 1986 & Supp. 1997); Mich. Comp. Laws Ann. § 767.5a (West 1982 & Supp. 1997); Minn. Stat. § 595.02(1)(d) (West 1988 & Supp.1997); Miss. Code. Ann. § 13-1-21 (1972 & Supp. 1996); Mo. Ann. Stat. § 491.060(5) (West 1996); Mont. Code Ann. § 26-1-805 (1993); N.H. Rev. Stat. Ann. § 329:26 (1995); N.J. Stat. Ann. § 2A:84A-22.2 (West 1994 & Supp. 1997); N. M. R. Evid. 504; N.Y. Civ. Prac. L. & R. § 4504 (West 1992 & Supp. 1997); N.C. Gen. Stat. § 8-53 (1986); Ohio Rev. Code Ann. § 2317.02(B) (Anderson Supp. 1985); Or. Rev. Stat. § 40.235 (1988); 42 Pa. Cons. Stat. § 5929 (1982); Tex. R. Evid. 509; Utah R. Evid. 506; Vt. Stat. Ann. Tit. 12, § 1612 (Supp. 1996); Va. Code. Ann. § 8.01-399 (Michie 1992 & Supp. 1997); Wash. Rev. Code Ann. § 5.60.060(4) (West 1995 & Supp. 1997); Wis. Stat. Ann. § 905.04 (West Supp. 1986); Wyo. Stat. Ann. § 1-12-01 (Michie 1977).

4.    ***Responding To The Subpoena Is Unduly Burdensome.***

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) provides that the court by which a

subpoena is issued shall quash or modify the subpoena if it subjects a person to undue burden.

The subpoena at issue herein places an "undue burden" upon non-parties. With regard to

Hahnemann, the burden is a logistical one—the subpoena seeks to compel Hahnemann to devise

a mechanism to search through three years of records for procedures performed at Hahnemann in

order to ferret out the procedures which are at issue herein. Once those procedures are identified,

the records will have to be reviewed again in order to gather together only those records in which

Dr. Evans was involved in the care and treatment of the patient.

Once these tasks are completed, the very nature of the request, "identify the patient

medical record numbers for the abortions that you have performed or supervised within the past

three years where the induction method of abortion was considered but rejected by either you or

the patient because the method was contraindicated" will mandate that Hahnemann assign

qualified personnel to carefully read each and every medical record, in *toto*, in order to attempt to

determine whether this particular treatment option was "considered but rejected" by Dr. Evans or

his patients. The review of the medical records will need to be particularly detailed in order to

determine if such a treatment option was discussed and to try to determine why this treatment

option was rejected. This will entail an exorbitant amount of time, energy and cost to the

hospital.

The invasion of privacy which will be occasioned has also been held to constitute an

"undue burden." Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d

922, 927 (8th Cir. 1999). As discussed herein, the subject subpoena threatens the disclosure of

intimately private medical details of people who are nothing more than strangers to the instant

litigation. The hospital has an obligation to its patients to ensure that their confidential records remain confidential and are not disclosed when no clear, legitimate state interest is benefited by the disclosure of the same for use in a public lawsuit.

**Conclusion**

Based upon the foregoing, movant, Tenet HealthSystem Hahnemann, LLC, d/b/a Hahnemann University Hospital, respectfully requests that its Motion to Quash be granted.

Respectfully submitted,

McCann & Geschke, P.C.

_Timothy I. McCann_
Timothy I. McCann, Esquire
Andrew S. Kessler, Esquire

1819 J.F.K. Boulevard, Suite 330
Philadelphia, PA 19103
215.568.1133

Attorneys for Movant,
Tenet HealthSystem Hahnemann, LLC d/b/a
Hahnemann University Hospital

18

**Issued by the**

# UNITED STATES DISTRICT COURT

### for the Eastern District of Pennsylvania

**ORIGINAL**

NATIONAL ABORTION FEDERATION, et al.,       **SUBPOENA IN A CIVIL CASE**

Plaintiffs,

V.                                          CASE NUMBER:[1]    03 Civ. 8695 (RCC) (S.D.N.Y.)

JOHN ASHCROFT,

Defendant.

TO:     Hahnemann University Hospital — attn.: Michael P. Halter, Chief Executive Officer
        230 North Broad Street
        Philadelphia, PA 19102

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All medical records associated with those medical record numbers to be identified by plaintiff Mark I. Evans, M.D. in response to the discovery demands served upon him in the above-captioned case. See attachment hereto.

| PLACE    *Attn.: AUSA Gregory Paw (215-861-8423)*
U.S. Attorney's Office for the Eastern District of PA, 615 Chestnut St., Ste. 1250, Philadelphia, PA 19106 | DATE AND TIME
1/21/04  10:00 a.m. |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Sheila M. Gowan*
Assistant United States Attorney, Attorney for Defendant | 1/5/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

AUSA Sheila M. Gowan , 33 Whitehall Street, 8th Floor, New York, NY 10004  212/637-2697



**EXHIBIT**

tabbies

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

JAMES B. COMEY
United States Attorney for the
Southern District of New York
By: SHEILA M. GOWAN (SG: 8201)
     SEAN H. LANE (SL: 4898)
     JOSEPH A. PANTOJA (JP: 1845)
     ELIZABETH WOLSTEIN (EW: 5194)
Assistant United States Attorneys
33 Whitehall Street -- 8th floor
New York, New York 10004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

NATIONAL ABORTION FEDERATION;  MARK I.  :
EVANS, M..D.; CAROLYN WESTHOFF, M.D., M.Sc;
CASSING HAMMOND, M.D.; MARC HELLER, M.D.;:        Government's First Set of
TIMOTHY R.B. JOHNSON, M.D.; STEPHEN              Interrogatories and Requests
CHASEN, M.D.; GERSON WEISS, M.D., on behalf  :   For Documents to Plaintiff
of themselves and their patients,                Mark I. Evans, M.D.

                                             :

              Plaintiffs,

                                             :

         - against -                             03 Civ. 8695 (RCC)

                                             :

JOHN ASHCROFT, in his capacity as Attorney
General of the United States, along with his officers,  :
agents, servants, employees, and successors in office,

                                             :

              Defendant.
----------------------------------------------------------x

     PLEASE TAKE NOTICE THAT, pursuant to Rules 33 and 34 of the Federal

Rules of Civil Procedure, and Rules 33.3 and 26.3 of this Court, defendant Attorney General

John Ashcroft (the "government"), by his attorney, James B. Comey, United States Attorney for

the Southern District of New York, hereby requests plaintiff Mark I. Evans, M.D., to answer

under oath the following written interrogatories and requests for documents, separately and fully

in writing, within thirty days after the date of service of this Notice. The answers hereto should

include all information known up to the date of the verification thereof.

     PLEASE TAKE FURTHER NOTICE THAT each interrogatory and each subpart

of each interrogatory should be accorded a separate answer. Each answer should first set forth

verbatim the interrogatory to which it is responsive. Interrogatories or subparts thereof should

not be combined for the purpose of supplying a common answer. The answer to an interrogatory

or a subpart should not be supplied by referring to the answer to another interrogatory or subpart thereof unless the interrogatory or subpart referred to supplies a complete and accurate answer to the interrogatory or subpart being answered.

PLEASE TAKE FURTHER NOTICE THAT these interrogatories and this request for documents are continuing and you should promptly supply by way of supplemental answers any and all additional responsive information or documents that may become known prior to the trial of this action.

## DEFINITIONS

A.    DOCUMENT: The word "document" has the meaning of "documents" set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and includes writings, drawings, graphs, charts, photographs, computer disks, and any other data compilations from which information can be obtained and/or translated, if necessary, by the respondent through detection devices into reasonably usable form.

B.    IDENTIFY: To "identify" a person means to give, to the extent known, the person's full name, present or last known home address and telephone number, and the present or last known address and telephone number of place of employment.  To "identify" a document means to give, to the extent known, (a) the type of document; (b) the general subject matter; (c) the date of the document; (d) the author(s), addressee(s) and recipient(s); and (e) if the document is a medical record, the location where the medical record is kept.  To identify a firm, partnership, corporation, business trust or other association or a division, department or unit means to give, to the extent known, its full name and principal office address and telephone.

C.    ADDITIONAL TERMS:  The definitions of "communication," terms referring to parties, "person," "concerning," "all," "each," "and," "or," and other terms contained in Rule 26.3 of the Civil Rules of the United States District Court for the Southern District of New York apply herein.

D.    MEDICAL RECORD NUMBER: "Medical record number" means the

2

number assigned to the medical records relating to a particular patient or other identifier sufficient to enable retrieval of the patient's medical records.

## INSTRUCTIONS

E.     Responses to requests to identify documents and persons shall be in accordance with Rules 26.3(c)(3) and (4) of the Local Rules of the United States District Court for the Southern District of New York.

F.     Where duplicate copies of one document exist, these need not be produced unless they contain writings or notes which do not appear on all other copies of that document.

G.     If you refuse to identify and/or withhold any document requested herein on the ground of privilege, you must comply with the requirements of Rule 26.2(a)(1) and (2)(A) of the Local Rules of the United States District Court for the Southern District of New York in setting forth the information listed therein with respect to each claim of privilege.

## INTERROGATORIES

1.     Identify the patient medical record numbers for the abortions that you have performed or supervised within the past three (3) years where the induction method of abortion was considered but rejected by either you or the patient because the method was contraindicated.

2.     Identify the patient medical record numbers for the abortions that you have performed or supervised within the past three (3) years using the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

3.     Identify the number of abortions that were performed at the Institute for Genetics and Fetal Medicine at St. Luke's-Roosevelt Hospital Center in New York County (see complaint at paragraph 9) within the past (3) years using the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

4.     Identify the patient medical record numbers for the abortions performed or supervised by you during or after the second trimester of a patient's pregnancy, within the year 2003, where a procedure utilizing injection(s) of chemical agent(s) in order to effect intrauterine

3

fetal demise was considered but its use was rejected either by you or by the patient.

5.    Identify the patient medical record numbers for the abortions performed at the Institute for Genetics and Fetal Medicine at St. Luke's-Roosevelt Hospital Center in New York County (see complaint at paragraph 9) during or after the second trimester of a patient's pregnancy, within the year 2003, where a procedure utilizing injection(s) of chemical agent(s) in order to effect intrauterine fetal demise was considered but its use was rejected either by you or by the patient.

6.    Identify which, if any, of the articles that you have published in peer-reviewed journals concern the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

7.    Identify which, if any, of the books that you have authored or co-authored concern the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

8.    Identify which, if any, companies or entities or organizations have given you research grants concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

9.    Identify the case caption and case number for all legal proceedings in which you have testified concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

10.    Identify the case caption and case number for all legal proceedings in which you have submitted declarations and/or affidavits concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

11.    Identify the state(s) of residence of all patients for whom you have performed or supervised an abortion within the past five (5) years by the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the

4

complaint.

12.    Identify the state(s) of residence of all patients who have received abortions at the Institute for Genetics and Fetal Medicine at St. Luke's-Roosevelt Hospital Center in New York County within the past five (5) years by the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

## DOCUMENT REQUESTS

1.    All documents identified in response to any interrogatory set forth herein.

2.    The medical records associated with the patient medical record numbers identified in response to interrogatory numbers 1 through 5.

3.    All transcripts of your testimony identified in response to interrogatory number 9.

4.    All declarations and/or affidavits identified in response to interrogatory number 10.

5.    All teaching material that you have prepared concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

6.    All teaching material that you have used concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

7.    All documents and/or visual depictions used by you to inform or educate your patients (or prospective patients) about the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

8.    Examples of all consent forms (blank) used by you for abortions performed by the method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

9.    All statistics kept by you concerning the type of abortion procedure

5

performed on patients within the past five (5) years.

      10.    All statistics kept by the Institute for Genetics and Fetal Medicine at St. Luke's-Roosevelt Hospital Center in New York County concerning the type of abortion procedure performed on patients at that institute within the past five (5) years.

      11.    All written material prepared by you concerning the abortion method intact D&E, also known as intact dilation and extraction or D&X as stated in paragraph 39 of the complaint.

      12.    All documents supporting the statement in paragraph number 22 of your declaration dated February 10, 2000 submitted in the case captioned <u>Mark I. Evans, M.D., et al. v. Jennifer M. Granholm, Attorney General, et al.</u>, 00 Civ. 70586 (AJT), that injections of potassium chloride or other chemical agents in the fetal cardiac chamber to cause fetal demise "would generally not be an option for women miscarrying; for women in need of abortions earlier than approximately eighteen weeks lmp; and for women with contraindications for such injections, such as extreme obesity."

Dated: New York, New York
       November 28, 2003

                Respectfully submitted,

                JAMES B. COMEY
                United States Attorney for the
                Southern District of New York,
                Attorney for Defendant

By:    _Sheila M. Gowan_
        SHEILA M. GOWAN (SG: 8201)
        SEAN H. LANE (SL: 4898)
        JOSEPH A. PANTOJA (JP: 1845)
        ELIZABETH WOLSTEIN (EW: 5194)

        Assistant United States Attorneys
        33 Whitehall Street – 8th Floor
        New York, New York 10004
        Tel. No.: (212) 637-2697

## Certificate of Service

I, SHEILA M. GOWAN, Assistant United States Attorney for the Southern District of New York, hereby certify that on the 28th day of November, 2003, I caused the service of a true copy of the foregoing First Set of Interrogatories and Requests for Documents Directed to Plaintiff Mark Evans, M.D., by overnight mail, next business day delivery, upon counsel for plaintiffs addressed as follows:

> Susan Talcott Camp, Esq.
> Reproductive Freedom Project
> American Civil Liberties Union Foundation
> 125 Broad Street
> New York, New York 10004

Dated:  New York, New York
        November 28, 2003

_____
SHEILA M. GOWAN

7

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In the matter of
a subpoena for deposition
issued in the case of

NATIONAL ABORTION FEDERATION )
et al.                        )
                              )
              Plaintiffs,     )
                              )        No.
        v.                    )
                              )
JOHN ASHCROFT,                )
                              )
              Defendant,      )
                              )
TENET HEALTHSYSTEM HAHNEMAN, )
LLC, D/B/A HAHNEMANN UNIVERSITY)
HOSPITAL,                      )
                              )
              Movant.         )

## O R D E R

AND NOW, this            day of                  , 2004, upon consideration

of the Motion to Quash of Tenet HealthSystem Hahnemann, LLC, and any response thereto, it is

hereby ORDERED and DECREED that said Motion is GRANTED.  The subpoena issued to

Tenet HealthSystem Hahnemann, LLC by defendant John Ashcroft on January 5, 2004 is hereby

QUASHED.

By The Court:

_____
                                U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

NATIONAL ABORTION FEDERATION;  MARK I.    :
EVANS, M..D.; CAROLYN WESTHOFF, M.D., M.Sc;
CASSING HAMMOND, M.D.; MARC HELLER, M.D.;:
TIMOTHY R.B. JOHNSON, M.D.; STEPHEN
CHASEN, M.D.; GERSON WEISS, M.D., on behalf     :
of themselves and their patients,

                                             :

                        Plaintiffs,                      03 Civ. 8695 (RCC)

                                               :

         - against -                      ORDER

                                             :

JOHN ASHCROFT, in his capacity as Attorney
General of the United States, along with his officers,    :
agents, servants, employees, and successors in office,

                                           :

                 Defendant.

------------------------------------------------------------x

RICHARD CONWAY CASEY, United States District Court Judge:

      In accord with the Health Insurance Portability and Accountability Act of 1996

("HIPAA"), 45 C.F.R. 164.512(e)(1)(i), non-party witness Hahnemann University Hospital (the

"Hospital") is authorized to disclose to the Defendant the medical records and information

sought in the attached subpoena to be served on the Hospital by the Defendant pursuant to Rule

45 of the Federal Rules of Civil Procedure.

      Any application regarding this subpoena must comply with Federal Rule of Civil

Procedure 45(c) and (d).

So Ordered:  New York, New York
             December 31 , 2003

                                       *Richard Conway Casey*

                                   Richard Conway Casey, U.S.D.J.

EXHIBIT
B
tabbies®

<u>CERTIFICATE OF SERVICE</u>

I, Andrew S. Kessler, Esquire, attorney for movant, Hahnemann University Hosptial,

certify that a true and correct copy of the Motion to Quash and Memorandum of Law in Support

was served by United States mail, first class, postage prepaid, to counsel and parties listed below,

on January 20, 2004, addressed as follows:

Gregory Paw, AUSA
U.S. Attorney's Office for the
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Sheila M. Gowan, AUSA
33 Whitehall Street, 8th Floor
New York, NY 10004

Susan Talcott Camp, Esquire
Reproductive Freedom Project
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004

McCann & Geschke, P.C.

By:    _Andrew S. Ke_____
       Andrew S. Kessler, Esquire